Cunliff *v.* The Mayor, &c. of Albany.

---

SAME TERM.    *Before the same Justices.*

CUNLIFF *vs.* THE MAYOR, &c. OF ALBANY.

Where, by an act of the legislature, the mayor and common council of the city of Albany, were authorized to take possession of, and widen, and construct the draws in the bridges over the basin in that city ; and in pursuance of that authority they took possession of the bridge extending from the foot of State-street to the pier, and caused a new bridge to be built, which was constructed in such a negligent, careless, and improper manner, that it broke down, and fell while the plaintiff was crossing the same, and he was thereby greatly injured ; *Held*, that the corporation having assumed to build the bridge, and having built it so unskilfully as to occasion the injury to the plaintiff, he was entitled to recover against

Cunliff *v.* The Mayor, &c. of Albany.

them, therefor; notwithstanding the duty of maintaining and keeping the bridge in repair was imposed upon the pier proprietors, by law, and such proprietors were in the possession and use of the bridge, at the time it fell.

Upon a bill of exceptions, a new trial will be granted if immaterial evidence has improperly been admitted.

But where a verdict sought to be set aside on the ground that immaterial evidence was admitted, is clearly sustainable upon the other evidence in the case, it should distinctly appear that the evidence objected to was immaterial, before a new trial will be granted for the error of the judge in suffering it to be admitted.

THIS was an action on the case, tried at the Albany circuit in February, 1847, before PARKER, Cir. J. The first count of the declaration averred that, under and by virtue of an act of the legislature, passed April 27, 1835, entitled "an act to improve the navigation of the Albany basin," the defendants were authorized to take possession of, and widen, and construct the draws in the bridges over the basin in the city of Albany. And that in pursuance of such authority the defendants took possession of the bridge extending from the foot of State-street to the pier, which was then in a good state and condition and was in good repair, so that the same might with safety be crossed to and from the pier; and that they so constructed the same that it could not be crossed with safety, and that owing to the negligent, careless and improper manner in which the same was constructed by the defendants, it broke and fell while the plaintiff was upon the bridge, and he was thereby greatly injured. The second count averred that the defendants so carelessly, negligently and improperly *widened and constructed* the draw of the bridge, that while the plaintiff was crossing the same it fell, and he was thereby greatly injured. The third count averred that the defendants *altered and enlarged* the draw in so negligent, careless, and improper a manner, that the same broke and fell and injured the plaintiff. The plea was the general issue.

The plaintiff proved, on the trial, that the defendants, in January, 1837, passed an ordinance directing the building of the bridge, and in the spring of that year the bridge was rebuilt by one Van Zandt, under a contract with the defendants. It was proved that the timbers used in the construction of the

draw were unfit both in size and quality of material. The plaintiff called one Baldwin as a witness, and asked him whether he told Col. McKown, who was chairman of the committee appointed to superintend the construction of the bridge, that the timber they had got for the bridge was not sufficient for the place. The question was objected to by the defendants' counsel, and the objection was overruled. The plaintiff also proved that the draw of the bridge broke down while he was crossing it, in August, 1840, and thereby he had his thigh broken. The draw of the bridge was tended by a man employed by the pier proprietors.

The defendants' counsel moved for a nonsuit, on the ground that by law the duty of maintaining and keeping the bridge in repair was imposed upon the pier proprietors, and that they being in the possession and use of the bridge, were alone liable to the plaintiff for damages. That the defendants' liability ceased when the pier proprietors took possession. The circuit judge denied the motion for a nonsuit, and the defendants' counsel excepted.

The circuit judge charged the jury that if the fall of the bridge was occasioned by being neglected by the pier proprietors, or by being improperly repaired by them, the defendants were not liable; or if the fall was occasioned in part by the negligence of the pier proprietors, and in part by its originally defective construction, that then the defendants were not liable; but if the fall was owing exclusively to the negligent and improper manner in which it was constructed by the defendants, the plaintiff was entitled to recover. The jury found a verdict for the plaintiff for $5000. The defendants moved for a new trial, upon a case containing a stipulation that the same might be turned into a bill of exceptions.

*M. T. Reynolds,* for the defendants.

*S. H. Hammond,* for the plaintiff.

Cunliff *v.* The Mayor, &c. of Albany.

*By the Court,* HARRIS, P. J.   The circuit judge very properly put the plaintiff's right to recover upon the ground that the fall of the bridge, which occasioned the injury to the plaintiff, was owing exclusively to the negligent and improper manner in which it had been constructed by the defendants.   Whether the law of 1835 was passed by a constitutional majority or not, it is not material to inquire.   The defendants, under the provisions of that law, assumed to build the bridge, and if they have built it so unskilfully as to occasion an injury to an individual, they ought not to be heard to object, in defence of an action to recover damages for such injury, that they were not legally authorized to do the act which has caused the injury. So far as this action is concerned, it is enough that the bridge was built by the defendants.   The jury have found that it was constructed in a negligent and improper manner, and that the injury sustained by the plaintiff was wholly caused by such defective construction.   Having assumed to do the work, and having neglected to perform it in a proper manner, how can the defendants exempt themselves from the consequences of their neglect?   Is there any thing in this case to relieve the defendants from the operation of the general rule, that where one party sustains an injury by the misfeasance of another, the injured party may maintain an action for redress adapted to the nature of his case?   Unless there is, the verdict of the jury was clearly right.   The bridge, in which the draw that fell was constructed, is one of the chief thoroughfares of the city of Albany, and the defendants were bound to exercise a degree of caution in the manner of constructing the work, proportionate to the magnitude of the injury likely to result from a defective construction.   The testimony abundantly shows that the defendants were culpably negligent in allowing the work to be done so unskilfully by their contractor, as greatly to endanger the lives of the multitudes who had occasion to cross the bridge.

But it is said that the pier owners were bound, after the new draw had been constructed by the defendants, to keep it in repair and tend it as they were before required to do, by law, and that when, in the discharge of their duty, the pier owners as-

sumed the charge of the draw, the liability of the defendants, for any unskilfulness in its construction, ceased. I am unable, however, to discover any sound principle upon which the defendants can claim such a limitation to their liability. Nor can I agree with the counsel for the defendants that the plaintiff has a clear remedy against the pier owners. On the contrary, unless they too are, to some extent, chargeable with negligence, in the management of the draw after it had been constructed by the defendants, I cannot discover any ground upon which they could be made liable to the plaintiff for the injury he has sustained. It appears that the pier owners had offered to construct the draw themselves, but their proposition was rejected by the defendants. They had no control over the work. It is not pretended that the relation of principal and agent existed between the pier owners and the defendants. If the pier owners could have been made liable at all, for the damages sustained by the plaintiff, it must, I apprehend, have been upon the ground that, being obliged to maintain and tend the draw, they were bound to remove a nuisance which had been erected there, though it may have been erected by another. But if this were so, I cannot see how it could be made available as a defence by the party who erected such nuisance. In short, I can see nothing in the circumstances of this case to take it out of the operation of the general principle, that every person is liable for injuries resulting from the want of proper skill or care in the discharge of his duty.

I have had some doubt as to the admissibility of the testimony of the witness Baldwin, in relation to his statement to Col. McKown. Nor do I now regard the question as entirely free from difficulty. It is well settled that upon a bill of exceptions a new trial will be granted if immaterial evidence has improperly been admitted. (*Myers* v. *Malcom*, 6 *Hill*, 296.) The reason upon which the rule is founded is well stated by the learned reporter in a note to the case cited. It is, that the decision of the judge, admitting the evidence, being made in the presence of the jury, amounts to a decision that the jury have a right to regard the evidence, in their deliberations, and it is

Cunliff *v.* The Mayor, &c. of Albany.

impossible to know what weight such improper evidence may
have had with the jury. Had the evidence been offered for
the purpose of aggravating damages, by showing that at the
time the work was in progress, the defendants were informed
that the timbers were insufficient, I should have had no doubt
that it would have been inadmissible. But it does not appear
to have been claimed that the plaintiff was entitled to increased
damages by reason of the defendants' actual knowledge that
the work was improperly constructed. The testimony seems
to have been offered with a view to show the value of the
opinion of the witness that the defendants had constructed the
draw in an unskilful manner, by showing that while the work
was progressing, his attention was particularly called to the
character of the timber used in constructing the draw, and that
he then expressed to the agent of the defendants the same
opinion which, as a witness upon the trial, he had expressed.
I cannot say that such testimony, offered for such a purpose,
was wholly irrelevant. On the contrary, I think it might
properly be received and considered by the jury as giving
strength and importance to the opinion the witness had already
expressed, that the bridge was improperly built. It is evident,
from the charge of the circuit judge, that no other weight or
effect was given to this evidence, and as the verdict is clearly
sustainable upon the other evidence in the case, it should dis-
tinctly appear that the evidence was immaterial, before a new
trial should be granted for the error of the judge in suffering it
to be admitted. I am of opinion, therefore, that the motion for
a new trial should be denied.

New trial denied.